DARMOUR v. CHAPMAN et al.

(Supreme Court, Appellate Division, Second Department. February 18, 1896.)

REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE.

> An instrument reciting, "Received of D. settlement of contract * * * in the following manner: Check $3,673.93; check (held by F. until indemnity bond produced) $1,538.06; balance, $2,452.78, to be held by D. until disputed claims of H. ($1,536.03) and T. ($916.75) have been adjusted by me," signed by C., and followed by the declaration, signed by D., that the "foregoing is the receipt delivered to me, * * * and I hold the moneys as above set forth," is properly reformed, to show the condition to be entered in the indemnity bond,—plaintiff having offered evidence as to what it was, and that by mutual mistake it was omitted, and defendant not having offered evidence to contradict this.

Appeal from special term, Queens county.

Action by James F. Darmour against Robert R. Chapman, impleaded with others. From a judgment for plaintiff, defendant Chapman appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

George W. Stephens, for appellant.

G. Washbourne Smith, for respondents Hammond and Tracy.

Joseph Fitch, for respondent Fitch, trustee.

Nelson Smith, for respondent James F. Darmour.

HATCH, J. This action was brought to reform a trust agreement and enforce the same. The plaintiff was a contractor, engaged in the erection of barracks at Willetts' Point, Queens county, for the federal government. As such contractor, and about September 20, 1893, he entered into a contract with one Charles J. Worth to do the mason and carpenter work for the erection of the barracks and furnish the material therefor. Under this contract, Worth prosecuted the work, and furnished materials therefor, until about the 20th day of April, 1894, when he failed. Thereupon plaintiff, Worth, and Chapman agreed that Chapman should go on, take the materials which Worth had furnished, and the building as it then stood, and complete the same for a specified sum, and pay the obligations which Worth had contracted in the construction. Plaintiff and Chapman, in pursuance of this agreement, entered into a written agreement. This agreement contained no clause that Chapman should pay Worth's debts. In view of the conclusion reached, we do not deem this fact important. Chapman fulfilled the contract and completed the barracks. At the time of Worth's failure he was indebted to the defendant Hammond for brick furnished at the barracks, to Tracy for laying brick, and to certain other persons for labor performed, now represented by defendant Fitch. After the barracks was completed, plaintiff, Chapman, and Fitch met for the purpose of an accounting and settlement, when it was found that plaintiff was indebted to Chapman in the sum of $7,-664.77. It was thereupon agreed that plaintiff should pay to Chapman $3,673.93, and the balance, $3,990.84, should be held by plaintiff,

for the benefit of Hammond, Tracy, and Fitch, as trustee, until their claims, which Chapman questioned, could be adjusted by him. Thereupon the following "declaration of trust," so called, was drawn:

"Long Island City, October 4th, 1894.

"Received of James F. Darmour settlement of contract to build barracks at Willetts' Point in the following manner: Check $3,673.93; check (held by Joseph Fitch until indemnity bond produced), $1,538.06; balance, $2,452.78, to be held by James F. Darmour until disputed claims of E. J. Hammond ($1,536.03) and Richard Tracy ($916.75) have been adjusted by me.

"Robert R. Chapman."

"The foregoing is the original receipt delivered to me this day, and I hold the moneys as above set forth.

"James F. Darmour."

This paper was written by Chapman, and delivered at that time, and in his answer he admits its execution. Subsequently, a bond was delivered by Fitch to defendant Chapman, conditioned for the payment of any amounts shown due on the claims represented by Fitch; but the same was never executed by Chapman, and no bond of indemnity was ever executed or delivered by him. Before this action was commenced, plaintiff requested Chapman to adjust the accounts mentioned in the agreement, and he refused. The money, which was retained by plaintiff, in pursuance of the settlement, was deposited in the Queens County Bank in the name of plaintiff's wife, Julia Darmour. After the demand was made upon Chapman to adjust the accounts, he brought an action against the plaintiff, his wife, and the bank to obtain an injunction restraining defendants from disposing of, or otherwise interfering with, the fund on deposit, and obtained a preliminary injunction therein. This resulted in a judgment making permanent the temporary injunction, with leave to Darmour to move to vacate the same, unless, within 10 days after the payment of certain costs, Chapman adjusted the claims of Hammond and Tracy, or instituted litigation to determine the rights of the parties with respect to the money. Thereupon this action was brought, and has resulted in a judgment reforming the declaration of trust by inserting the conditions in the bond of indemnity running to Fitch, and deciding that the respective parties named in the declaration are entitled to the several amounts therein expressed, and directing that checks be made out by Julia Darmour, and delivered to the respective parties, and the injunction is vacated so far as to allow the Queens County Bank to pay the same. It is now earnestly argued that this judgment may not stand, and several reasons which require examination are assigned therefor.

The complaint alleged that the agreement between plaintiff and defendant did not contain the clause that Chapman should pay Worth's debts, and asked for its reformation in that respect. But it is clear that this allegation was not regarded as important, in view of the evidence, and the court made no finding thereon, nor did the decision of the court reform the agreement in this respect. Consequently, much of defendant's argument in this regard is without force. The real question presented, and the one upon which the court passed, was the defect in the declaration of trust. With

respect to that the complaint alleged that, by mutual mistake, it did not contain the condition to be entered in the bond of indemnity to be delivered to Fitch. The court found, as a fact, that it did not, and the respect in which it failed. This finding was clearly correct. The declaration itself provided for the giving of a bond, and it is evident that some condition was contemplated which the bond should contain, else it would be ineffectual for any purpose. The natural inference which arises is that, as the claims which Fitch represented were to be adjusted by Chapman, and the sum of money being limited in amount, the condition of the bond would be to pay the amount found due upon adjustment, not exceeding the specified sum. This is substantially what the evidence tends to establish, and defendant, although sworn, did not deny it, while Gregg, who was sworn for him, testified with respect to who was to draw the bond, but he did not claim that the evidence given was wrong respecting its conditions. A case was therefore presented which required reformation, within the doctrine of the most extreme cases, as it was clear beyond mistake. Southard v. Curley, 134 N. Y. 148, 31 N. E. 330.

What transpired before the declaration of trust was executed is not of importance here, whatever may have been the original agreement. It is certain, beyond dispute, that Chapman recognized some liability for the claims mentioned in the declaration of trust, and that liability was to be determined by an adjustment of the claims, while the fund stood as security. It became Chapman's duty to adjust them, and in this he failed. All that was necessary in this action was to determine their amounts. The evidence is abundant to establish the claims of Hammond and Tracy for the full amount of the sum stated in the declaration. The evidence is less satisfactory respecting the parties whom Fitch represented. But we think it sufficient. The claim due Owen, of $435, which formed a part of the amount, has been stipulated by the parties, and paid since the trial. The other claims are all set out in the answer of the defendant Fitch, with the respective amounts. The testimony of plaintiff is that the amounts represented by these claims were contained in a list of indebtedness which was present when the agreement to complete the building was made, and which Chapman was to pay. Fitch states that the amount of these claims represented the amount of the check. It is objected that the list was not produced; but that objection was not taken upon the trial, nor was any objection urged to the oral statement of what it contained. Defendant Chapman nowhere in his testimony denies or puts in issue the amount of these claims. His whole effort was directed to establish that he never agreed to pay any of them. While the burden undoubtedly was upon Fitch to establish the amount of the claims, yet the issue which Chapman tendered was not as to the amount due upon the claims from somebody, but a denial that he was liable for any sum whatever. In this view, we think the claims were sufficiently established to uphold the finding of the court.

The discussion respecting the extent to which the building had progressed, and the amount of indebtedness assumed of Worth's

debts, we think, is aside of the questions presented on this appeal. The agreement made provides for the payment to the parties named of whatsoever sum should be found due them, up to a specified amount. The only issue, therefore, was as to the amount of the claims. This has been found to be, upon sufficient evidence, the sums specified; and, whether we call the paper a declaration of trust, or an assignment, or whatever we call it, it amounts to a setting apart of certain moneys, which, upon the happening of a contingency, should belong to the parties named. That contingency has happened, and a legal inquiry has adjudged that the money be paid to the parties entitled.

We think the judgment is right, and should be affirmed, with costs. All concur.